801 So.2d 1230 (2001)
Willie SALARD
v.
DIAMOND M TILE & MARBLE, INC.
No. 01-373.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
Rehearing Denied January 9, 2002.
*1231 Roger A. Havier, Hailey, McNamara, Hall, Larman & Papale, L.L.P., Metairie, LA, Counsel for Defendant/Appellant Diamond M Tile & Marble, Inc.
H. Gregory Walker, Jr., Walker, Passman & Michiels, Alexandria, LA, Counsel for Plaintiff/Appellee Willie Salard.
Court composed of NED E. DOUCET, Jr., Chief Judge, JIMMIE C. PETERS, and MARC T. AMY, Judges.
DOUCET, Chief Judge.
Defendant, Diamond M Tile & Marble, Inc., appeals a judgment of the Office of Workers' Compensation awarding Claimant, Willie Salard, temporary total benefits from June 29, 1999, until his condition improves, medical expenses, penalties and attorney's fees for failure to pay those expenses, interest on the foregoing, penalties and attorney's fees for failure to pay Claimant the first week of compensation benefits, and ordering Defendant to pay for the surgery recommended by Dr. John Cobb. Claimant answered the appeal seeking additional attorney's fees necessitated by Defendant's prosecution of this appeal. We reverse that portion of the judgment awarding Claimant penalties and attorney's fees for failure to pay the first week of compensation benefits as the record (Exhibit D-3) shows this benefit was paid August 26, 1999; we affirm the remainder *1232 of the judgment; and we award Claimant an additional $2,500.00 in attorney's fees for legal work necessitated by this appeal.

FACTS
Claimant was employed by Defendant to lay ceramic tile. Defendant's place of business was in Alexandria, jobs were accepted in remote locations. In order to facilitate its business, Diamond M would have the employees who were to work at a remote job site assemble at a prearranged location in Alexandria. There, the employees would leave their personal vehicles and occupy company trucks to be transported to the job site. On June 29, 1999, Mr. Salard was on his way back from such a site, in Eunice, when the vehicle in which he was a passenger was struck by a car which had run a red light. The occupants of the Diamond M truck were not wearing seat belts as the truck was an older vehicle and the seat belts had become inoperable. The sixty-six year old Mr. Salard, who had been working for nine straight days, did not at first believe he was injured, attributing his pain to the long stretch without a day off and his being sedentary in the truck for over an hour.
Claimant first sought treatment at Rapides General Hospital on July 1, 1999. Two days later, when he had not improved, he went to Cabrini Hospital, and on July 19, he consulted Dr. John Cobb, who became his treating physician. Dr. Cobb ordered an MRI, which revealed stenosis at the L 4-5 level secondary to hypertrophic joints and a possible aneurysm. Dr. Cobb's notes of July 28, 1999, revealed that he talked with Claimant about doing a decompression at the L 4-5 level, that he referred him to Dr. Jeffrey P. Budden for evaluation of the possible aneurysm and to Dr. Al W. Beacham for evaluation of Claimant's complaint that he had trouble emptying his bladder. While awaiting on Dr. Budden's opinion regarding the aneurysm and the feasibility of surgery, Dr. Cobb began treating Mr. Salard conservatively with physical therapy and medication. Dr. Budden confirmed the existence of an aneurysm, but concluded that the surgery could be performed safely. When conservative treatment proved ineffective, Dr. Cobb, once again, recommended surgery, on December 13, 1999.
Meanwhile, on October 26, 1999, Diamond M had Mr. Salard seen by Dr. Mark Dodson for an independent medical examination. Dr. Dodson requested a second myleogram, as he was not satisfied with the quality of the first MRI; he also requested a CT scan. Defendant failed to approve the tests requested by their own examining physician until September 2000. Both were finally done on October 26, 2000. Dr. Dodson agreed that the surgery recommended by Dr. Cobb was an "option" to be considered in Claimant's case. To the date the OWC judgment was rendered, Claimant has yet to have the recommended surgery and has not been able to return to work.

MOTION FOR STAY
Prior to considering the merits of this appeal, we must consider the Motion to Stay filed by Defendant, Diamond M. Diamond M urges that we stay all proceedings in this matter pursuant to an order issued by the Commonwealth Court of Pennsylvania. That order, issued May 29, 2001, places Reliance Insurance Company into Rehabilitation under the appropriate provisions of Pennsylvania law. The order further provides that (emphasis ours):
All actions currently pending against Reliance in the Courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed. All actions currently pending in the Courts of the Commonwealth of Pennsylvania or elsewhere against an insured of Reliance are *1233 stayed for 60 days or such additional time as the Rehabilitator may request.
Diamond M therefore filed a motion requesting that this appeal be stayed. This court stayed action on the case for 60 days. Subsequently, by an order of the Commonwealth Court of Pennsylvania, No. 269 M.D. 2001, dated October 3, 2001, Reliance Insurance Company was placed into liquidation. Based upon that judgment, Diamond M seeks a further stay.
We have examined the judgment of the Pennsylvania court and have found the following language in section 22 of the judgment (emphasis ours):
Unless the Liqiudator consents thereto in writing, no action at law or equity, or arbitration or mediation, shall be brought against Reliance or the Liquidator, whether in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further prosecuted after the date of this Order. All actions, including arbitrations and mediations, currently pending against Reliance in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed. All actions, including arbitrations and mediations, against Reliance or the Liquidator shall be submitted and considered as claims in the liquidation proceeding.
We note that the 60 day stay included actions against "an insured of Reliance," while the Order of Liquidation addresses only actions against Reliance or the Liquidator. Since neither Reliance nor its Liquidator were ever a named party in the case sub judice, we find that the Pennsylvania Order of Liquidation does not prohibit this court from proceeding with the consideration of this appeal.

LAW AND DISCUSSION
The standard of appellate review in workers' compensation cases is well settled:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, 93-1530 at p. 5,630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990).
Balthazar v. Guillory Racing Farms, 00-941, p. 2 (La.App. 3 Cir. 3/7/01); 802 So.2d 9, 12, citing Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7-8 (La.7/1/97); 696 So.2d 551, 556.
On appeal, Diamond M presents five assignments for review:
1. The trial court erred in finding Defendant failed to pay the first week of indemnity benefits as such benefits were clearly paid.
2. The trial court committed manifest error in finding that Plaintiff was injured in the course and scope of *1234 his employment merely because Plaintiff was driving in a company vehicle at the time of the accident; Defendant did not retain an interest in Plaintiff's transportation and Defendant did not provide the transportation as an incident to Plaintiff's employment agreement.
3. The trial court committed manifest error in finding that Plaintiff did not commit fraud pursuant to LSA-R.S. 23:1208 when Plaintiff's sworn testimony contrasted with the surveillance videos introduced at trial clearly demonstrate that he made willful false statements for the purposes of maintaining workers' compensation benefits.
4. The trial court committed manifest error in awarding $7,000 in penalties and attorney fees as there is no basis for said award in light of the fact that Defendant continued to pay workers' compensation benefits through trial.
5. The trial court erred in finding that the surgery recommended by Dr. Cobb is both reasonable and necessary when both Dr. Cobb and Defendant's choice of physician, Dr. Dodson, have not reviewed the surveillance videos or the diagnostic films.

ASSIGNMENT NO. 1
As we have previously stated, we reverse that portion of the judgment awarding Claimant penalties and attorney's fees for failure to pay the first week of compensation benefits as the record (Exhibit D-3) shows this benefit was paid August 26, 1999.

ASSIGNMENT NO. 2
We find no merit to this assignment. The record reveals that Diamond M's employees met at a central location in Alexandria, where they left their personal vehicles, and were then transported to the out of town job site in Diamond M's vehicles. The law applicable to the status of employees going to and returning from work sites has been discussed a number of times. Recently, a panel of this court stated:
This court in Bergeron v. Mar-Con, Inc., 97-263 (La.App. 3 Cir. 11/26/97); 705 So.2d 232, writ denied, 98-806 (La.5/8/98); 719 So.2d 52, following Orgeron [Orgeron v. McDonald, 93-1353 (La.7/5/94); 639 So.2d 224], held as a general rule an employee involved in an accident while traveling to and from work is not acting within the course and scope of his employment and is therefore not entitled to workers' compensation benefits. However, we also cited Orgeron's exception that an employee, required to check in at a certain place and then dispatched to the work site, generally is engaged in the course of employment while traveling between the check in place and the work site, but not between home and the check in place. The RGIS employees in this case were required to meet at a check-in site, the Holiday Inn South in Baton Rouge, before departing for Alexandria. Applying the holdings in Orgeron and Bergeron, RGIS' auditors were engaged in the course and scope of their employment.
Johnson v. Templeton, XX-XXXX-XX-XXXX, p. 8 (La.App. 3 Cir. 3/29/00); 768 So.2d 65, 71, writ denied, 00-1235, (La.8/31/00); 766 So.2d 1276. Following the above cited jurisprudence, we find Claimant was in the course and scope of his employment at the time of the accident.

ASSIGNMENT NO. 3
By this assignment, Defendant claims that Claimant committed fraud because his testimony was contradicted by a *1235 few minutes of surveillance video taken over the course of four days. Mr. Salard testified that he used a cane constantly, but the video showed him moving about his yard without the aid of the cane. We agree with the workers' compensation judge that this discrepancy does not raise to the level of fraud. Our examination of the testimony of the two investigators who made the video convinces us that the video does not reveal Mr. Salard engaging in any activity which he would not be able to do based upon his complaints and upon the evaluation of the doctors who examined him. Hence, we find this assignment without merit.

ASSIGNMENT NO. 4
We have already reversed the penalty of $2,000.00 and the $2,500.00 in attorney's fees for Defendant's alleged failure to pay Claimant the first week of benefits. Therefore, we assume that in this assignment Defendant claims that the workers' compensation judge erred in awarding penalties and attorney's fees totaling $7,000.00 for failing to pay Claimant's medical expenses. The record reveals that Defendant was grossly negligent in fulfilling its obligation to pay Claimant's medical expenses. In fact, Claimant is still waiting for his much needed back surgery. Considering the foregoing, we find no error on the part of the workers' compensation judge in these awards.

ASSIGNMENT NO. 5
By its final assignment of error, Defendant argues that the workers' compensation judge erred in finding that the surgery recommended by Dr. Cobb is both reasonable and necessary. We disagree. In his report of December 1, 1999, Dr. Dodson, Defendant's choice of physicians, states "... I would not recommend surgery for him." However, after a second MRI and CT scan were done, almost a year later, Dr. Dodson's report states the following;
"The CT scan showed hypertrophic osteoarthritis at the L 4/5 level and the L 5/S 1 level. I reported to them that if the CT scans are definitive, then decompression/fusion is an option. I was provided a report by Dr. John Cobb, in which he recommended a L 4/5 decompression/fusion at that level, both anteriorly and posteriorly. I felt that consideration would also need to be given to a L 5/S 1 decompression/fusion, because of the degenerative findings at that level."
Thus, by October of 2000, Defendant's choice of physicians, Dr. Mark Dodson, not only agreed with Dr. Cobb that Claimant needed surgery at the L 4/5 level, but opined that an additional decompression/fusion be considered for the L 5/S 1 level. Hence, we find this assignment, also, without merit.
Claimant has answered Defendant's appeal seeking additional attorney's fees necessitated by Defendant's prosecution of this appeal. We award Claimant an additional $2,500.00 in attorney's fees.
Accordingly, for the reasons stated above, we affirm the judgment of the Office of Workers' Compensation awarding Claimant, Willie Salard, temporary total benefits from June 29, 1999, until his condition improves, medical expenses, penalties and attorney's fees for failure to pay those expenses, interest on the foregoing, and ordering Defendant to pay for the surgery recommended by Dr. John Cobb. We award Claimant an additional $2,500.00 in attorney's fees for work necessitated by this appeal. We reverse the award of penalties and attorney's fees for failure to pay Claimant the first week of compensation benefits as the record reveals this was done in August of 1999. All costs of this *1236 appeal are assessed against Defendant, Diamond M Tile & Marble, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.