815 So.2d 131 (2002)
Ronald MARLER
v.
NEW ORLEANS AREA COUNCIL, BOY SCOUTS OF AMERICA, and Louisiana Workers' Compensation Corporation.
No. 01-CA-1167.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2002.
*132 Robert J. May, Johnson, Stiltner & Rahman, Metairie, LA, for Defendants/Appellants.
J. Paul Demarest, Seth H. Schaumburg, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Plaintiff/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
The issue presented for our review in this workers' compensation matter is whether the trial court erred in finding *133 that claimant, Ronald A. Marler, did not violate LSA-R.S. 23:1208, and did not willfully make false statements for the purpose of obtaining workers' compensation benefits.
The record shows that Mr. Marler injured his back in the course and scope of his employment with defendant, New Orleans Area Council, Boy Scouts of America (Boy Scouts), on May 30, 1996. Mr. Marler received benefits until January 27, 2000, at which time the Boy Scouts terminated all benefits. Claimant filed a disputed claim with the Office of Workers' Compensation on March 2, 2000. After a trial on the merits, the trial court rendered judgment in favor of claimant, which found that claimant was temporarily totally disabled as a result of a work related accident and reinstated benefits that were discontinued by defendant. The judgment further found that the claimant did not willfully make false statements for the purpose of obtaining workers' compensation benefits. The court also penalized defendant for arbitrary and capricious refusal to pay benefits. The Boy Scouts filed an appeal from that judgment. Claimant filed an answer to the appeal seeking additional attorney fees.
In his testimony at trial, claimant chronicled a difficult period from the time he was injured in May, 1996 until the present. He explained his frustration in not being able to get proper medical attention for his injury and timely approval for the treatments. He stated that he was ordered to return to work after the injury despite the doctor's advice to rest. He explained that his right leg has atrophied to the extent that he fell and damaged his shoulder and neck. The resulting surgery was done through his personal hospitalization because he was unable to rely on his employer.
The exacerbation of the injury by the delays in approval for medical treatment was substantiated by Dr. George Murphy, a board certified orthopedic surgeon, who treated claimant. He first saw Mr. Marler in February, 1997. At that time Dr. Murphy reviewed the patient's MRI, which showed a degeneration at the last two discs and a bulging at the 4-5 disc. He treated claimant conservatively with anti-inflammatory medication and rest. That treatment was unsuccessful and claimant's symptoms worsened. Claimant began to develop some weakness in the right leg and was limping. On March 27, 1997, Dr. Murphy ordered nerve testing. On April 24th claimant returned to Dr. Murphy in considerable pain. However, Dr. Murphy was unable, despite several efforts, to get insurance approval for the nerve tests. The test was ultimately performed on May 13, 1997. Dr. Murphy opined that the lengthy wait between the time the nerve conduction tests were ordered, and when they were approved, caused the patient's condition to deteriorate. After review of the test, which showed moderate to severe right L5-S1 radiculopathy, Dr. Murphy informed his patient that the condition required surgery. He further stated that a myelogram and a CAT scan were necessary to plan the surgery. The necessary testing was not done until June 23, 1997 because Dr. Murphy again had difficulty getting the diagnostic testing approved. Dr. Murphy stated that in order to get approval, he had to personally call one of the doctors and convince him of the need. Dr. Murphy attempted to schedule Mr. Marler for the necessary surgery, to no avail. He was told by defendant that he would have to send the claimant for a second opinion. On August 7th claimant returned to Dr. Murphy. At that time Dr. Murphy found continued deterioration of the right leg. It now measured three full centimeters of atrophy. Nonetheless, approval *134 did not come for the surgery until August 28th, and the surgery was performed on September 3rd.
At the time of the surgery, the nerve root was found to be quite inflamed and thickened with some fibrosis, and it was very irritated. The disc was pressing under the nerve root and the foramen was also very compromised. There were some changes on both sides, but the right side was clearly worse, showing considerable evidence of pressure, inflammation, and damage to the nerve root. The extent of the damage was due to the delay in treatment caused by the delay in approval by defendant.
Dr. Murphy testified that the surgery stopped the damage from worsening, but without therapy, strength in the right leg and back would not return. Although approval was requested in September for physical therapy, it was not given until December. During the interim, the claimant continued to have problems with his back and leg and was getting depressed. Over the next few months claimant had physical therapy and pain management classes. Despite the therapy, he continued with chronic pain and his leg did not increase in size or strength. It was now apparent that the nerve damage was permanent, and claimant currently requires a cane to walk. In describing the length of time between request for testing, surgery and physical therapy, Dr. Murphy used the terms "absurd" and "ridiculous". His testimony also makes it clear that claimant's condition was made worse by the delay in treatment.
When the condition did not improve, claimant became more depressed and Dr. Murphy encouraged claimant to see a psychiatrist. Claimant was at first reluctant to follow that suggestion and resisted for several months. However, after the situation worsened and claimant began to fall often due to weakness in the back and right leg, he became more despondent and ultimately sought treatment for depression.
In brief to this court, defendant only complains of that portion of the judgment which found that the claimant did not willfully make false statements for the purpose of obtaining workers' compensation benefits in violation of LSA-R.S. 23:1208. Defendant asserts that claimant made misrepresentations regarding prior back injuries and treatment which precludes him from receiving benefits. Specifically, defendant argues claimant did not reveal that he was diagnosed with lumbar strain as a result of an automobile accident on September 16, 1995, that he was diagnosed with degenerative disc disease of the lumbar spine, as well as cervical strain and tendinitis of the shoulder over sixteen years ago.
During cross-examination at trial, claimant re-iterated his testimony in his deposition that, with the exception of a muscle pull for which he was treated by Dr. Rogers, he sustained no injuries to, or sought no treatment for, his back prior to the injury sustained in May, 1996 in the course and scope of his employment with the Boy Scouts. He also stated that he was never diagnosed with lumbar disc disease prior to the accident. He admitted being in an automobile accident on September 16, 1995, but denied any back injury as a result. He testified that he was treated by Dr. Walker Abbott after the accident for wrist injuries. He did not recall reporting any back pain to Dr. Abbott. He also testified that he only remembered getting money to fix his car after the accident, and did not recall receiving any money for bodily injury.
On re-direct, claimant explained that in answering the questions regarding his prior medical history, he thought the information *135 sought concerned only major problems which required ongoing treatment. He described the automobile accident in 1995 as an inconsequential event in his life. His physical injuries and property damages were small and quickly resolved. He did not lose time from work, and his life continued normally.
After hearing the testimony and reviewing the documentary evidence, the trial court rendered judgment in favor of claimant. In making that ruling, the trial court made it clear that it considered the testimony and demeanor of the claimant, and found him to be a credible witness.
Defendant's argument is rooted in LSA-R.S. 23:1208, which provides in pertinent part as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . . . . . . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The requirements for forfeiture under Section 1208 are broadly worded and are applicable to false statements or representations, including those concerning prior injuries. Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7. In reviewing the findings of fact, we also are mindful that statutory forfeiture is a harsh remedy and, therefore, must be strictly construed. Hernandez v. Eskco, Inc., XXXX-XXXX (La.App. 4 Cir. 11/15/00), 773 So.2d 865; writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 824. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Resweber v. Haroil Construction Co., supra, 660 So.2d at 16; Tuminello w. Girling Health Care Inc., 98-977 (La.App. 5 Cir. 1/26/99), 731 So.2d 316. False statements that are inadvertent or inconsequential will not result in forfeiture. Resweber v. Haroil Construction Co., supra. After establishing that a claimant has made a false statement or misrepresentation which could result in forfeiture of benefits, the hearing officer must make a factual determination as to whether, based on the record, the statement was willfully made specifically to obtain benefits, and thus defraud the workers' compensation system. Rapp v. City of New Orleans, 93-2137, 2057, 2083, 2067, 2073, 2074, 2076, 2081, 2085, 2091, 2102, 2103, 2107, 2314, 2167, 2065, 2064, (La.App. 4 Cir. 12/29/99), 750 So.2d 1130, 1139; writ denied, XXXX-XXXX (La.4/7/00), 759 So.2d 761.
Whether a claimant forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal unless the finding is clearly wrong or manifestly erroneous. Rivera v. West Jefferson Medical Center, 96-152, 96-153 (La.App. 5 Cir. 7/30/96), 678 So.2d 602. Reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed, even though our appellate review may lead us to another reasonable evaluation. LeBlanc v. Grand Isle Shipyard, Inc., 95-2452 (La. App. 1 Cir. 6/28/96), 676 So.2d 1157, 1161.
In the instant case, defendant complains of inconsistencies between claimant's testimony regarding prior injuries and the doctors' reports of those injuries in three instances. In his statements, claimant mentioned a muscle pull in his lower back which occurred about sixteen *136 years ago, among other injuries. Defendant introduced claimant's medical records from Dr. George Byram which showed that claimant had been diagnosed with degenerative disc disease of the lumbar spine sixteen years ago. At trial, claimant testified that he was never told of the diagnosis and did not mention the back pain because he sought treatment from Dr. Byram primarily for a knee injury which required surgery. He considered any back pain to be too minor to mention.
In the second instance, claimant failed to disclose an injury received in an automobile accident in September, 1995. It appears this injury was a cervical injury which claimant considered resolved and not significant. While there are inconsistencies in claimant's testimony, there is no indication that they were made to defraud the workers' compensation system.
Given the law and the facts in this case, we do not find the trial court was manifestly erroneous or clearly wrong in finding that, while claimant omitted some facts concerning his prior condition, these misrepresentations were not made willfully for the purpose of obtaining workers' compensation benefits. Accordingly, we affirm the judgment on appeal.
Claimant has filed an answer to the appeal requesting this court to award attorney fees for additional work incurred in defending the appeal. We hereby award the claimant $5,000.00 in attorney fees for work on the appeal, and amend the judgment accordingly.
AMENDED AND AS AMENDED AFFIRMED.