# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 02-1502

VILA HARRIS

VERSUS

CHRISTUS ST. PATRICK HOSPITAL

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3,
PARISH OF CALCASIEU, NO. 02-1869,
CHARLOTTE L. BUSHNELL,
WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy, and Michael G. Sullivan, Judges.

**Amy, J., concurs in part and dissents in part and assigns written reasons.**
**Decuir, J., concurs in part and dissents in part for the reasons assigned by Judge Amy.**

### AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.

Kevin L. Camel
Cox, Cox, Filo, & Camel
723 Broad Street
Lake Charles, Louisiana 70601
(337) 436-6611
Counsel for Plaintiff/Appellee:
    Vila Harris

David L. Morgan
Stockwell, Sievert, Viccellio,
    Clements & Shaddock
Post Office Box 2900
Lake Charles, Louisiana 70602
(337) 436-9491
Counsel for Defendant/Appellant:
    Christus St. Patrick Hospital

SULLIVAN, Judge.

Christus St. Patrick Hospital (St. Patrick) appeals a judgment awarding Vila Harris, a former nursing assistant, temporary total disability benefits, anti-depression medication prescribed by a pain management specialist, penalties and attorney fees. For the following reasons, we affirm in part, reverse in part, and amend.

**Discussion of the Record**

Ms. Harris was injured on April 5, 2000, when an obese patient rolled over her dominant right hand, pushing it back so that her knuckles touched her forearm. She continued to work at light duty until June of 2000, when her employer began paying her temporary total disability benefits. After undergoing multiple surgical procedures by Dr. Lynn Foret, an orthopedic surgeon, she was referred to Dr. Kevin Gorin for pain management.

Dr. Gorin first saw Ms. Harris on August 7, 2001, when he diagnosed her with complex regional pain syndrome (formerly called reflex sympathetic dystrophy), Type II, as evidenced by median and ulnar neuropathies, and compensatory cervical and shoulder myofascial pain syndrome secondary to impaired mechanics. He also believed that she suffered from an adjustment disorder with major depression. Upon examination, he noted that she was guarding her right upper extremity, with the right thumb extremely contracted, and that all digits on her right hand were swollen, discolored, and cool to touch. He also noted decreased sensation near the right thumb tendons. Dr. Gorin considered her temporarily totally disabled, although he was not optimistic that she would ever regain productive use of her right upper extremity. He prescribed Neurontin, Zanaflex, and Hydrocodone for pain with the expectation of beginning anti-depressant therapy once those medications reached therapeutic levels.

Dr. Gorin reported the same examination and diagnoses at her next visit, on September 20, 2001, noting that she was doing reasonably well with her medications.

He expected that Ms. Harris would reach maximum medical improvement in approximately forty-five days, at which time he believed she would be employable at light duty, but without the use of her right hand. On November 10, 2001, Dr. Gorin released Ms. Harris to light duty employment, with upper extremity restrictions, and recommended vocational rehabilitation. On January 25, 2002, Dr. Gorin added Celexa to her medications for depression. He still considered her employable at light duty, with restrictions on upper extremity pulling, pushing, lifting, and carrying.

Based upon these reports, St. Patrick hired Scott Smith to perform vocational rehabilitation services for Ms. Harris. Mr. Smith initially submitted two jobs for Dr. Gorin's approval: a patient advocate position at Lake Charles Medical Clinic (the Clinic) and a job dispensing eye-wear prescriptions at a vision center. Upon Dr. Gorin's approval of the patient advocate position on January 28, 2002, St. Patrick terminated Ms. Harris' benefits as of February 12, 2002, as Mr. Smith reported that the job paid more than ninety percent of Ms. Harris' pre-injury wages.

When Ms. Harris returned to Dr. Gorin on April 11, 2002, he noted that her right arm was quite swollen and extremely cool to touch, differing about 2.5 degrees centigrade from the left hand. Although Ms. Harris wore an orthotic device for positioning, Dr. Gorin believed the right upper extremity was functionally useless. He still considered her capable of light duty, but he did not believe that she could perform any positions that had been offered to date, as they required some use of the right upper extremity. On April 17, 2002, he issued a disability slip stating that she was not released to her old job or to work in any occupation. At the next office visit of June 28, 2002, Dr. Gorin noted that the right swelling and dystrophic changes recorded at the previous visit were unchanged, if not worse. He also found severe trigger points in the right cervical and upper trapezius regions, which he directly

2

related to guarding of the right arm and overuse of proximal region musculature. He again stated that she was not fit for duty at any job that he had been asked to review. He also noted that her depression, which he related to job injury, had improved from use of the Celexa, but that the workers' compensation carrier had not approved the medication.

Mr. Smith testified at trial that he located the patient advocate position through an advertisement in the newspaper. He stated that he did not obtain the specific restrictions of the job or its rate of pay from the Clinic, but that he consulted the "Dictionary of Occupational Titles" and the "Louisiana Occupational Wage Survey Report" for the information that he included in his job description. He further testified that he did not know if the job required the use of the hand to take notes, and he acknowledged that, despite the information in the survey report, the job could have paid only minimum wage. Dr. Gorin testified in his deposition that he approved the job based upon a conversation with Mr. Smith from which he understood that the position would require the jotting of brief messages as opposed to more detailed documentation.

Julie Dell, the human resources director from the Clinic, testified that the patient advocate position was one that the Clinic only considered filling. She explained that, although she accepted applications for the job, it was never actually created. According to Ms. Dell, the position would have required the ability to fill out forms and to use a computer. She doubted that an applicant who lost the use of her dominant hand could fulfill the job's requirements. She also testified that, because the job never existed, she did not set a wage rate for it.

Because Mr. Smith was unaware that Ms. Harris' benefits were terminated, he identified six additional positions for her, four of which Dr. Gorin approved in August

of 2002. Some of those jobs, however, were part-time, paid only minimum wage, or had special requirements, such as the applicant being the parent of an emotionally disturbed child. Mr. Smith testified that he offered a full range of vocational services to Ms. Harris, but that he did not receive the level of participation from her that he desired.

Maxine Guillory, St. Patrick's workers' compensation representative, testified that the decision to terminate Ms. Harris' benefits was based upon the location of the patient advocate position and upon information from an anonymous telephone call about Ms. Harris. According to Ms. Guillory, someone called the hospital's risk management department, stating that Ms. Harris was caring for her ill mother in a Houston hospital and that she had previously injured her right hand in an automobile accident in Texas.

Ms. Harris, fifty-five years old at the time of trial, testified that she worked as a nursing assistant for thirty years. She stated that she now has constant swelling and pain in her right arm, which must be kept in a brace to prevent her hand from curling. She said that she was in an automobile accident in 1983 in which she injured her right foot. Although her right hand was not injured from the impact of the accident, some glass apparently became imbedded in her palm as she was helped out of the vehicle. She explained that she developed an infection two years later when she tried to remove the glass herself and that she had to be hospitalized for surgical removal of the glass, drainage, and infection control. Four months after the infection was cleared, she returned to work as a nursing assistant with no problems.

At trial, she admitted that she discussed only the foot injury when questioned about that accident in her deposition, but explained that she thought she caused the infection two years later by trying to get the glass out herself and that she considered

4

it a "minor thing" that happened "long, long ago." Hospital records indicated that she was hospitalized nine days for treatment of an abscess in her right hand in 1985. She also stated in her deposition that she was "certain" she had not injured her right hand or arm before.

At the close of the evidence, the workers' compensation judge (WCJ) ruled in Ms. Harris' favor, ordering the reinstatement of temporary total disability benefits and awarding $5,000 in attorney fees for the arbitrary and capricious termination of benefits; ordering the payment of the anti-depression medication prescribed by Dr. Gorin and awarding $2,000 in penalties and $3,000 in attorney fees for the failure to reasonably controvert entitlement to this treatment; and rejecting St. Patrick's claims for reduction of benefits based upon refusal to accept vocational rehabilitation and for forfeiture of benefits based upon false statements made in connection with a pending claim.

## Forfeiture of Benefits

St. Patrick argues that the WCJ erred not ordering the forfeiture of Ms. Harris' benefits under La.R.S. 23:1208. We will consider this issue first because its resolution could render the remaining assignments of error moot.

Louisiana Revised Statutes 23:1208 provides in part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *KLLM, Inc. v. Reed*, 00-295, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 731 (citations omitted), we offered the following analysis in applying Section 1208:

5

The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Section 1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture.

Nonetheless, statutory forfeiture is a harsh remedy and, therefore, must be strictly construed. False statements that are inadvertent or inconsequential will not result in forfeiture. Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error.

"After establishing that a claimant has made a false statement or misrepresentation which could result in forfeiture of benefits, the [WCJ] must make a factual determination as to whether, based on the record, the statement was willfully made specifically to obtain benefits, and thus defraud the workers' compensation system." *Marler v. New Orleans Area Council, Boy Scouts of Am.,* 01-1167, pp. 7-8 (La.App. 5 Cir. 3/13/02), 815 So.2d 131, 135.

In deciding that Ms. Harris had not violated Section 1208, the WCJ found her responses were reasonable, considering that the problem with her hand did not develop until two years after an automobile accident that, in turn, occurred almost twenty years before the statements in her deposition. Although the employer need not show prejudice as a condition under forfeiture under Section 1208, "[t]he relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits." *Marler*, 815 So.2d at 135. When we consider Dr. Gorin's testimony that such an incident would only be significant if it continuously caused problems before the present accident and Ms. Harris' testimony that she resumed working as a nursing assistant with no problems with her hand or thumb, we cannot find error in the WCJ's ruling.

6

St. Patrick also argues that the WCJ was prejudiced in deciding this issue because she had just received our decision of *Lanthier v. Family Dollar Store*, 02-429 (La.App. 3 Cir. 10/02/02), 827 So.2d 547, holding that the Office of Workers' Compensation (OWC) did not have subject matter jurisdiction to hear Section 1208 claims. (On remand from the supreme court, this court, sitting *en banc*, repudiated that position in *Lanthier v. Family Dollar Store*, 02-429 (La.App. 3 Cir. 1/8/03), __ So.2d.__.) Although the WCJ first stated that the OWC did not have jurisdiction to hear the claim based on *Lanthier*, 827 So.2d 547, she clearly indicated that she was proceeding to the merits of the Section 1208 defense in the alternative, in the event the OWC did have jurisdiction. We find no evidence that the WCJ was prejudiced by the original *Lanthier* opinion, which did not address the merits of a Section 1208 claim.

**Anti-Depression Medication**

In this assignment of error, St. Patrick argues that the WCJ erred in ordering it to provide the anti-depression drug Celexa that was prescribed by Dr. Gorin, a pain management specialist, when La.R.S. 23:1021(7)(d) requires that a compensable mental injury or illness be diagnosed by a licensed psychiatrist or psychologist. St. Patrick also contends that the WCJ erred in penalizing it for relying on this statute.

Louisiana Revised Statutes 23:1021(7)(b) and (c) require that "[m]ental injury caused by mental stress" and "[m]ental injury caused by physical injury" be "demonstrated by clear and convincing evidence" to be compensable. Section 1021(7)(d) provides:

> No mental injury or illness shall be compensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.

7

In awarding benefits and penalizing St. Patrick for the failure to approve the anti-depression medication, the WCJ found that St. Patrick's interpretation of Section 1021(7)(d) in this case was unreasonable and not within the intent of the statute. For the following reasons, we agree with the WCJ that Ms. Harris was entitled to the prescribed medication, but we disagree that St. Patrick should have been penalized for relying upon the above statutory provisions.

In *Armentor v. Arrow Pest Control*, 02-533 (La.App. 3 Cir. 10/30/02), 832 So.2d 378, *writ denied*, 03-139 (La. 3/21/03), 840 So.2d 536, we held that La.R.S. 23:1021(7)(c) and (d) provided reasonable grounds for controverting the diagnosis and treatment of depression by an orthopedic surgeon; hence, we found that the WCJ erred in penalizing the employer for relying on those statutory provisions. However, we specifically did not reach the issue of whether depression related to chronic pain was a "[m]ental injury caused by physical injury" under Section 1021(7)(c) that must be diagnosed by a mental professional under Section 1021(7)(d). In *Johnson v. St. Patrick Hospital,* 02-828 (La.App. 3 Cir. 12/11/02), 832 So.2d 1162, we construed those statutory provisions in the context of anti-depression medication prescribed by a pain management specialist. In that case, we found no error in the WCJ's conclusion that the claimant did not prove his need for anti-depression medication was work-related, given evidence of his "long-standing psychiatric and psychological problems that require[d] treatment but [were] unrelated to his employment injury." *Id.* at 1164. We then cited, in dicta, as an additional basis for our decision, Section 1021(7)(d)'s requirement that the diagnosis of a mental injury or illness be made by a mental health professional.

In the present case, Ms. Harris was referred to Dr. Gorin for pain management after she had undergone multiple surgical procedures for a hyperextension injury of

8

the right wrist. Dr. Gorin, who was not optimistic that Ms. Harris would ever regain productive use of her dominant right hand, also prescribed Celexa for an adjustment disorder with major depression. Unlike *Johnson*, 832 So.2d 1162, there is no evidence in the present case that Ms. Harris had psychological problems unrelated to her employment injury. Given that Dr. Gorin considered Ms. Harris' dominant right hand to be "functionally useless," it seems clear that her claim for indemnity benefits and medical expenses is based upon this physical disability rather than the depression she suffered as a byproduct of her physical injury. Under these circumstances, we find that Ms. Harris' request for depression medication is not governed by the heightened burden of proof and diagnostic requirements of La.R.S. 23:1021(7)(c) and (d). We simply cannot conclude that the legislature intended to increase the cost and to extend the recovery time of each physical injury claim by requiring a psychiatric or psychological consultation whenever a physician in another specialty prescribes anti-depression medication in the course of treating that physical injury. Accordingly, we hold that La.R.S. 23:1021(7)(c) and (d) apply only when the claimant alleges to be disabled as the result of a mental injury or illness. We find it was error to penalize the employer in the present case, however, given the status of the jurisprudence at the time of its decision to deny the claim.

## Reduction in Benefits

St. Patrick next argues that the WCJ erred in failing to award a fifty percent reduction in benefits under La.R.S. 23:1226(E) for Ms. Harris' refusal to accept rehabilitation services because she failed to apply for certain positions, did not obtain a driver's license as recommended by Mr. Smith, and failed to perform an independent job search.

9

Louisiana Revised Statutes 23:1226(E) (emphasis added) provides in part: "Refusal to accept rehabilitation *as deemed necessary by the workers' compensation judge* shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal." In *Cajun Forge Co., Inc. v. Spell*, 98-1883, p. 2 (La.App. 3 Cir. 5/19/99), 734 So.2d 1283, 1284, we stated: "This section mandates a fifty percent reduction of workers' compensation benefits *only* after a claimant refuses to attend *court ordered* vocational rehabilitation." Because the rehabilitation program in that case had not yet been ordered by the WCJ, we found no error in the refusal to impose this penalty, although we recognized that the employer could reurge its motion for a reduction if the claimant failed to comply after the WCJ ordered such a program. In *Louisiana Pacific Corp. v. Allbritton*. 00-366 (La.App. 3 Cir. 10/11/00), 773 So.2d 170, we held that the employer was entitled to the fifty percent reduction only from the date of the order compelling the employee to submit to vocational rehabilitation. However, in *Banks v. Industrial Roofing & Sheet Metal Works, Inc*., 96-2840 (La. 7/1/97), 696 So.2d 551, the supreme court, without discussing the exact language of Section 1226(E), permitted a fifty percent reduction in benefits retroactively from the date the employee refused to cooperate with all rehabilitation. *See also City of Jennings v. Clay*, 98-225 (La.App. 3 Cir. 10/4/98), 719 So.2d 1164; *Romero v. Grey Wolf Drilling Co.,* 594 So.2d 1008 (La.App. 3 Cir. 1992).

In the present case, there is no prior order of rehabilitation services. Even if we found such an order to be unnecessary, however, we do not find that there has been a "complete refusal" to accept rehabilitation services, as was the case in *City of Jennings*, 719 So.2d 1164, and *Romero*, 594 So.2d 1008. *See Theriot v. Church Point Wholesale Beverage Co., Inc*., 00-1003, p. 8 (La.App. 3 Cir. 2/14/01), 780 So.2d 556,

10

561. Mr. Smith testified that Ms. Harris met with him on two occasions. Ms. Harris testified that she applied for the patient advocate position, but the person who took her application questioned whether she would be able to perform the job because of the brace on her arm. Ultimately, that position never materialized, but as envisioned it would not have been within her medical restrictions. In April of 2002, Mr. Smith wrote to Ms. Harris' attorney, providing a list of six jobs; however, those positions were not reviewed by Dr. Gorin until August of 2002, at which time he determined that two were beyond her capabilities. It was not known whether the remaining positions were still available at the time Dr. Gorin approved them. Under these circumstances, we do not find that Ms. Harris was unreasonable in failing to apply for jobs that her physician did not approve, when the first position referred to her was so clearly unsuitable. We find no error the WCJ's refusal to order a reduction in benefits.

### Attorney Fees

Although not contesting the reinstatement of benefits, St. Patrick argues that the WCJ erred in imposing attorney fees for the termination of benefits, when its action was based upon Mr. Smith's location of the patient advocate position and upon its discovery of prior injuries that Ms. Harris failed to disclose.

Under La.R.S. 23:1201.2, reasonable attorney fees may be awarded for the discontinuation of benefits "when such discontinuance is found to be arbitrary, capricious, or without probable cause." In *Brown v. Texas-LA Cartage, Inc.*, 98-1063, pp. 8-9 (La. 12/1/98), 721 So.2d 885, 890, the supreme court defined arbitrary and capricious behavior as "willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." The decision to award penalties and attorney fees is a factual determination that will not be reversed on appeal absent a finding of manifest error. *Colonial Nursing Home*

11

*v. Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La. 4/21/03), 841 So.2d 802.

The WCJ ordered reinstatement of benefits after concluding that the patient advocate position failed all three criteria in *Banks*, 606 So.2d at 557:  it was not within Ms. Harris' "physical capabilities"; its wages could not be determined, as they had never been set; and it was not "an actual position," as it never was created.  In addition to these initial deficiencies, the record contains several reasons why the employer's continued reliance on that job as a defense to paying any indemnity benefits was unjustified.

On April 11, 2002, Ms. Harris returned to Dr. Gorin with worsening symptoms, leading him to rescind his approval of the patient advocate position.  On April 17, 2002, Dr. Gorin issued a handwritten disability statement that Ms. Harris was not released to work in any occupation.  Clint Dobson, the adjuster for St. Patrick, testified that he telephoned Dr. Gorin after he became confused about the disability slip and that Dr. Gorin indicated Ms. Harris could, in fact, perform the patient advocate job.  Mr. Dobson then wrote to Dr. Gorin in May of 2002, instructing him to contact Mr. Dobson if this was not his understanding of that conversation.  In his deposition, Dr. Gorin stated that Mr. Dobson must have misunderstood him about the job, that he did not recall reading the letter before the deposition, and that there was no indication that he had ever received it.  Even if Mr. Dobson were confused in May of 2002, Dr. Gorin sent a report in June stating again that Ms. Harris could not perform any job that had been reviewed to date.  Although St. Patrick suggests that Dr. Gorin "waffled" on disability because Ms. Harris contacted his office requesting a statement that she was disabled, the medical records show that Dr. Gorin recanted his approval of the job only after Ms. Harris' symptoms worsened.  Dr. Gorin did

approve four positions in August of 2002, but some of these jobs were low-paying or part-time, indicating that Ms. Harris was unable to earn ninety percent of her pre-accident wages. On this record, we are unable to conclude that the WCJ erred in awarding attorney fees. *See Bradley v. ConAgra Poultry Co.*, 03-23 (La.App. 3 Cir. 4/30/03), __ So.2d __.

Ms. Harris has answered the appeal seeking an increase in attorney fees for work performed on appeal. Although we reversed a portion of the judgment in her favor, we may still award additional attorney fees for appellate work. *See Colonial Nursing Home*, 834 So.2d 1262; *Frank v. Kent Guidry Farms*, 01-727 (La.App. 3 Cir. 5/8/02), 816 So.2d 969; and *Salard v. Diamond M Tile & Marble, Inc.*, 01-373 (La.App. 3 Cir. 12/12/01), 801 So.2d 1230, *writ denied*, 02-450 (La. 4/19/02), 813 So.2d 1091. Accordingly, Ms. Harris is awarded $2,000 in additional attorney fees for work performed on this appeal.

## Decree

For the above reasons, the judgment of Office of Workers' Compensation is reversed insofar as it awards penalties of $2,000 and attorney fees of $3,000 regarding anti-depression medication. The judgment is amended to award additional attorney fees of $2,000 on appeal. In all other respects, the judgment is affirmed. Costs of this appeal are assessed to Christus St. Patrick Hospital.

**AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.**

VILA HARRIS

VERSUS

CHRISTUS ST. PATRICK HOSPITAL

AMY, J., concurring in part, dissenting in part.

I respectfully dissent from that portion of the majority opinion addressing the employer's obligation to provide the anti-depression medication prescribed by the claimant's pain management specialist. In my opinion, the wording of La.R.S. 23:1021(7) (b), (c) and (d) clearly requires that the employer's obligation to provide this type of medication arises only after a diagnosis of mental injury or illness by a licensed psychiatrist or psychologist. As there was no such diagnosis in this case, I conclude that the workers' compensation judge erred in ordering the employer to provide the anti-depression medication. Accordingly, I dissent from the majority's affirmation of that ruling. In all other aspects of the opinion, however, I concur.