819 So.2d 508 (2002)
James WALLACE
v.
LAVERGNE TRANSPORT.
No. 2002-0123.
Court of Appeal of Louisiana, Third Circuit.
June 12, 2002.
*509 Thomas Joseph DeJean, DeJean & Leger, Opelousas, LA, for James Wallace.
Andrew Parker Texada, Stafford, Stewart & Potter, Alexandria, LA, for Lavergne Transport.
Court composed of MARC T. AMY, MICHAEL G. SULLIVAN and ELIZABETH A. PICKETT, Judges.
AMY, Judge.
The employer argues that the claimant violated the provisions of La.R.S. 12:1208 by cashing workers' compensation checks and engaging in other employment. The workers' compensation judge found in favor of the claimant and reinstated temporary total disability benefits. The employer appeals. For the following reasons, we affirm.

Factual and Procedural Background
The claimant, James Wallace, was injured on May 12, 1998 in a car accident while working as a truck driver for the defendant, Lavergne Trucking. Mr. Wallace explained that the truck that he usually drove was being repaired and that Lavergne Trucking supplied him with an older truck. He further explained that as he was driving and about to make a turn, "some air blew out of the truck and it locked the brakes up, it locked down the transmission and it disabled the power steering. And it jackknifed right there and the jackknife put it inin the ditch." As a result of the accident, the claimant suffered a back injury. The claimant was subsequently placed on workers' compensation temporary total disability benefits. On January 11, 1999, Dr. Stephen Goldware and Dr. Louis Blanda performed back surgery on the claimant, which included a discectomy and a fusion.
In October of 1999, the claimant began selling fresh shrimp and crabs out of his van on a roadside in Nuba, Louisiana. According to the testimony of Bridgette Wallace, *510 the claimant's wife, she purchased a commercial license in order to be able to buy seafood at wholesale prices in Grand Isle, Louisiana and sell it to family members and friends. The license was issued in the name of "Cajun Seafood." According to the medical records and the claimant's testimony, the claimant expressed a desire to increase his activity level and considered selling seafood as a means of getting out of the house and being productive.
On December 6, 1999, the defendant ceased payment of workers' compensation benefits to the claimant alleging that the claimant engaged in deceptive acts that constituted fraud pursuant to La.R.S. 23:1208. On October 12, 2000, the claimant filed a disputed claim for workers' compensation. On November 8, 2001, the workers' compensation judge found in favor of the claimant and ordered that the benefits be reinstated. The defendant filed this appeal. We affirm the decision of the workers' compensation judge.

Discussion
The defendant appeals, assigning two points of error. First, the defendant argues that the workers' compensation judge "erred in ruling that the deceptive acts and statements of James Wallace did not constitute fraud under the provisions of La. R.S. 23:1208." Next, defendant argues that the workers' compensation judge "erred in holding that Plaintiff's benefits could not be terminated for misrepresentations unless Plaintiff had been provided the fraud warning set forth in form LDOL-WC-1025."
The issues before us appear to contain both questions of law and questions of fact. Accordingly,
[i]t is well-settled legal principle that factual findings in workers' compensation cases are entitled to great weight. Reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. The trier of fact's factual determinations shall not be disturbed in the absence of a showing of manifest error. When the trier of fact's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Therefore, the appellate standard of review applicable to the findings of a WCJ is the manifest error-clearly wrong test.
Mitchell v. Brown Builders, Inc., 35,022, pp. 8-9 (La.App. 2 Cir. 8/22/01); 793 So.2d 508, 515, citing, Shelton v. Wall, 614 So.2d 828 (La.App. 2 Cir.1993). See also, Richard v. Workover & Completion, 00-794 (La.App. 3 Cir. 12/12/00); 774 So.2d 361. Nonetheless, if it is determined that the workers' compensation judge committed manifest error in its factual determinations or a reversible error of law, the appellate court conducts a de novo review of the record. Jackson v. Iberia Parish Gov't, 01-0925 (La.App. 3 Cir. 3/20/02); 813 So.2d 589, citing, Rosell v. ESCO, 549 So.2d 840 (La.1989).

La.R.S. 23:1208
The defendant first argues that the claimant engaged in "deceptive acts" and statements that constitute fraud under the provisions of La.R.S. 23:1208(A). La. R.S. 23:1208 states in part:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

*511 . . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Under La.R.S. 23:1208, in order for there to be a forfeiture of benefits, the claimant must have: (1) made a false statement or representation; (2) willfully made the statement or misrepresentation; and (3) made the statement or misrepresentation for the purpose of obtaining or defeating any benefits or payments[1]. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95); 660 So.2d 7. Additionally, all of these requirements must be present before a claimant can be made to forfeit benefits. Harris v. Bancroft Bag, Inc., 30,431 (La. App. 2 Cir. 4/9/98); 714 So.2d 44. Furthermore, this statute is penal in nature and must be strictly construed. Smalley v. Intergrity, Inc., 31,247 (La.App. 2 Cir. 12/9/98); 722 So.2d 332, writ denied, 99-0072 (La.3/19/99); 739 So.2d 782.
The defendant's main contention is that the claimant signed each disability check and the back of each check contained a printed statement which read: "FRAUD WARNING by endorsing this check I certify that I have not worked or earned any wages during the period covered by this check." Thus, the defendant argues that by signing the checks, which contained the fraud warning, and working, selling the seafood, the claimant violated La.R.S. 23:1208 and should lose all workers' compensation benefits.
Nevertheless, the claimant explains that he never hid his intention to sell the seafood. In fact, the claimant expressed the desire to sell the seafood to his physical therapist and explained that he wanted to have "something to do." The plaintiff had advertising flyers printed and sold the seafood at a busy intersection in Nuba, Louisiana. The claimant testified that he sold the seafood approximately for a period of six to seven weeks and that he stopped selling the seafood before his weekly benefits were terminated because he was not making any money. In his brief, the claimant points out that he was advised by his physicians not to do any heavy lifting, but was encouraged to become more active. The claimant and his wife both testified that selling the seafood to the public was not about "cheating anybody," but about giving the claimant a method to reenter society. Thus, the claimant ultimately argues that there was not a willful, intentional misrepresentation to obtain benefits as required by La.R.S. 23:1208.
In his oral reasons for judgment, the workers' compensation judge explained:
First I would note that there's a question about the accuracy of such a fraud warning because a person under a vocational training program is entitled to twenty-six weeks worth of training where they can receive wages and still receive temporary total disability benefits. There also is a provision in the workers' compensation law for a person to receive workers' compensation benefits designated as supplemental earnings benefits and also earn wages. So there are two occasions when a worker can earn wages and still receive compensation benefits.

*512 The evidenceat the time of termination of benefits the payor of benefits had no evidence that Mr. Wallace had derived any income of any nature from his activities of selling shrimp. He continually remained under the medical care during this time. All the physicians including Doctor deAlvare, Doctor Goldware, Doctor Bertuccini and Doctor Blanda, even as late as May 15th of 2001 stated that Mr. Wallace had not yet obtained maximum medical improvement and that, in fact, his EMG study showed a bilateral L-5 root lesion as late as May 15th, 2001.
Although this is a case predating the 1999 revisions to the workers' compensation law which added the fraud language, there's a case of Bradshaw versus Ronnie's Plumbing, 604 So.2d 1062, which involved an '86 back injury. There's videotape in that instance of a gentleman selling shrimp. This is a Fourth Circuit case. The Fourth Circuit concluded that the evidence contained in the video was not sufficient to establish that that claimant, Mr. Bradshaw, could work. They placed greater weight on the medical evidence with both doctors emphasizing the restrictions of Mr. Bradshaw and that he still remained disabled. That's very similar to the case with Mr. Wallace. There was a document introduced into evidence prepared by Mr. Wallace's wife from a calendar he maintained of his activities with this shrimp. Neither Mr. Wallace is an accountant, [nor is] his wife [] an accountant. The payor of benefits presented no evidence from an accountant as to the method for demonstrating the activities for cash sales. Mr. Wallace testified that his wife helped him considerably in the activities, that his children, two children, helped him considerably in the activities and he paid them no wages. Although he very well could have paid them wages. That in the document they prepared they made no estimation of the cost and wearof wear and tear on the vehicle that they utilized. The document does seem to show that over the course of this time period fromin the fall of 1999 all things considered, maybe they may have made seven hundred dollars, but, again, that's without taking into consideration the labor activity of his wife and children.
Moreover, the Court finds the case of Smalley versus Integrity, Incorporated, 722 So.2d 332, decided by the Second Circuit December 1998, writ denied of the Supreme Court at 739 So.2d 782. In the case of Louisiana Workers' Compensation Corporation versus Gray, that's G-R-A-Y, 2001 West Law, 488005, [786 So.2d 310], again decide[d] by the Second Circuit in May of 2001, wherein the Court discussed asimilar activities of someone failing to report income. The Court in Smalley stated and found that there was no affirmative duty on the part of a recipient of workers' compensation benefits to state they were making income.
. . . .
Well, I'd just like to note for the record in this matter that it seems to be in this case where there's an employee injured there's no question about his injury, his accident, no question about the seriousness of his injury. The employee on his own is very initiative, very industrious, makes an attempt to return to work, however the payor of benefits, rather than complying with its obligations to provide vocational assistance to assist the gentleman in returning to work or retraining him properly in entering a pursuit of shrimp sales commercially, instead doesn't provide him with the appropriate forms, doesn't make sure the *513 appropriate forms are provided by the Department of Labor, instead has him surveilled and then terminates his benefits before they're even aware that he has made any actual earnings from the activities they have observed.
We, too, agree that the defendant did not produce adequate evidence to meet the requirements of La.R.S. 23:1208, namely that the claimant was willfully making false statements. The claimant disclosed his intentions to his physical therapist and did not appear to operate in a cloak of secrecy. Additionally, from our review of the record, it does not appear that the claimant attempted to lie about his activity or was given the opportunity to explain his actions prior to the termination of his benefits. The workers' compensation judge made a credibility determination and chose to believe the claimant and his accounting of the work. While this case may be better suited for supplemental earnings benefits, which is a route that the defendant chose not to pursue, this specific case does not rise to the level of willful misrepresentation as prescribed in La.R.S. 23:1208.

Form LDOL-WC-1025
We now turn to the defendant's second assignment of error. The defendant argues that the workers' compensation judge erred in finding that the claimant's benefits "could not be terminated for misrepresentations unless plaintiff had been provided the fraud warning set forth in form LDOL-WC-1025."
La.R.S. 23:1208(F) states that "[w]henever the employer reports an injury to the office pursuant to R.S. 23:1306, the employer and employee shall certify their compliance with this Chapter to the employer's insurer on a form prescribed by the director...." In Smalley, 31-247, p. 8; 722 So.2d at 337, the second circuit stated "we also feel the legislature did not intend to permit the WCJ or appellate court to impose the penalty without the claimant's `receipt of the appropriate form.'" Also, the second circuit held in La. Workers' Compensation Corp. v. Gray, 34,731, p. 7 (La.App. 2 Cir. 5/9/01); 786 So.2d 310, 315-16, that "[u]ntil the proper notice and forms have been provided to a claimant pursuant to R.S. 23:1208 F, G and H, this court is reluctant to declare a claimant's failure to report income fraudulent."
In his oral reasons for ruling, the workers' compensation judge stated:
The Court [in Smalley, 31,247; 722 So.2d 332] noted changes in the 12-23:1208 fraud statute, particularly the additions of sections G, F and H which were added in the legislative session of the summer of 1995. Section H of the statute states whenever an employee fails to report to his employer's insurer as required by this section within fourteen days of his receipt of the appropriate form the employee's right to benefits as provided in this chapter may be suspended. If otherwise eligible for benefits the employee shall be entitled to all of the suspended benefits after the form has been provided to the insurer. The form referred to is the Workers' Compensation Louisiana Department of Labor form 1025 which iswhich an example is intoplaced into evidence which is the form which tells the employee what fraud is in Louisiana, that they are aware of the civil and criminal penalties associated with fraud. The employee must sign the form and return the form to its employer. The Court in Smalley and the Gray case under circumstances similar to this determined that without such form that there was no showing of fraud. Moreover, the implication of the Smalley and Gray case is that in situations such as these this is not a fraud *514 case anyway, this is just a case with supplemental earnings benefits which might amount to a suspension of benefits until the appropriate 1025 forms are executed and the report of earning forms are executed and returned to the payor of benefits.
The defendant, in its brief, argues that the claimant made material misrepresentations to State Claims Adjusters regarding statements that he was only selling seafood to family and friends and his inaccurate accounting of his work activity and statement of earnings. However, the claimant testified that his conversations with State Claims Adjusters were contentious. In addition, the representative from State Claims Adjusters, who had directly spoken with the claimant, did not testify. Moreover, Dawn Neville, the assistant claims manager from State Claims Adjusters, testified that she listened in on a conversation with the claimant, but could not independently recall the specifics of the conversation and relied on notes, that she did not write, to testify as to the conversation. Furthermore, the record fails to indicate that the defendant presented the workers' compensation judge with any specific, proven inaccuracies in the claimant's accounting records. In view of the above, we find no clear error in the workers' compensation judge's determination that the defendant failed to show the claimant willfully misrepresented the situation after being confronted with his seafood business activity. Additionally, as the workers' compensation judge correctly noted, the claimant did not receive form LDOL-WC-1025 and thus, was not put on constructive notice of the civil and criminal penalties for fraud regarding workers' compensation benefits.

DECREE
The decision of the workers' compensation judge is affirmed. All costs of this appeal are assigned to the defendant, Lavergne Transport.
AFFIRMED.
NOTES
[1] Although La.R.S. 23:1208 was amended by Acts 1995, No. 368, § 1, effective June 16, 1995; Acts 1995, No. 1129, § 1, effective June 29, 1995; Acts 1997, No. 90, § 1, effective June 11, 1997, and; Acts 1997, No. 394, § 1, effective August 15, 1997, the language cited from the decision in Resweber was unaffected. In Resweber, the supreme court refers to La. R.S. 23:1208(A), the language of which was not altered by the above listed Acts.