# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-486


APECK CONSTRUCTION, INC.

VERSUS

FOSTER M. BOWERS


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 01-4632,
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

## BILLY HOWARD EZELL
## JUDGE

************

Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy H. Ezell, Judges.

**Sullivan, J., dissents and assigns written reasons**.


**AFFIRMED IN PART AND REVERSED IN PART.**


**W. Michael Stemmans**
**M. Todd Alley**
**Michael J. Taffaro**
**Stemmans & Alley**
**668 South Foster Drive, Suite 101**
**Baton Rouge, Louisiana 70806**
**(225) 231-1288**
**Counsel for Plaintiff/Appellant:**
   **Apeck Construction, Inc.**

**John K. (Mike) Anderson**
**Attorney at Law**
**101 South 1ˢᵗ Street**
**Leesville, Louisiana  71446**
**(337) 239-9076**
**Counsel for Defendant/Appellee:**
**Foster M. Bowers, Jr.**

**EZELL, JUDGE**.

Apeck Construction, Inc. and Foster Bowers, Jr. appeal the judgment of the workers' compensation judge (WCJ). For the following reasons, we affirm in part and reverse in part.

## FACTS

Mr. Bowers went to work for Apeck on August 7, 2000. On January 7, 2001, he was injured while working. Apeck began paying him compensation benefits but terminated those benefits on April 7, 2001. It filed a disputed claim on July 2, 2001, denying any obligation to Mr. Bowers. Mr. Bowers filed a disputed claim on September 14, 2001, seeking compensation benefits, medical treatment, penalties, and attorney fees. Apeck deposed Mr. Bowers in December 2001 and questioned him about riding a horse in March 2001 and being thrown from or falling off of the horse. He denied having ridden a horse and being thrown or falling off. Thereafter, in January 2002, Apeck supplemented its original answer, alleging that Mr. Bowers made willful misrepresentations in violation of La.R.S. 23:1208, which forfeited "any and all" workers' compensation benefits he may have been entitled to receive.

All issues were tried before a WCJ on October 22, 2002. At the conclusion of the trial, the WCJ held that Mr. Bowers did make willful misrepresentations in violation of La.R.S. 23:1208 and that he forfeited "any and all workers' compensation benefits from December 3, 2001," the date of his deposition. He was assessed a $2,000 civil penalty pursuant to La.R.S. 23:1208(D). With regard to Mr. Bowers' claims against Apeck, the WCJ awarded him total temporary disability benefits for the period of April 8, 2001 until December 3, 2001. Additionally, the WCJ found that Apeck was arbitrary and capricious for terminating his benefits and awarded his attorney $7,500 in attorney fees. Mr. Bowers was also awarded a penalty of $2,000 and his attorney was awarded attorney fees of $2,500 for Apeck's refusal to allow him

to be evaluated by a physician of his choice.

## ISSUES

Apeck appealed, and Mr. Bowers answered the appeal. The issues are whether Mr. Bowers' misrepresentations meet the requirements of La.R.S. 23:1208; if so, whether forfeiture under La.R.S. 23:1208 affects his claims for indemnity benefits, penalties, and attorney fees which preceded the date of his misrepresentations; and whether a penalty should have been assessed against him.

## LOUISIANA REVISED STATUTE 23:1208

Louisiana Revised Statute 23:1208 provides in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

The supreme court first addressed La.R.S. 23:1208 in *Resweber v. Haroil Constr. Co.*, 94-2708, p. 1 (La. 9/5/95), 660 So.2d 7, 9, holding that it: "applies to any false statement or misrepresentation . . . made specifically for the purpose of obtaining workers' compensation benefits and therefore generally becomes applicable at the time of an employee's accident or claim." The court further explained:

> Section 1208 is clear and unambiguous and as such will be applied as written. La.Civ.Code art. 9; La.R.S. 1:4. Section 1208 clearly applies to *any* willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it to only certain types of false statements . . . The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or

2

representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.

Our conclusion is further buttressed by the legislative history of Sections 1208 and 1208.1. The history of Section 1208 indicates a clear legislative intent to prevent and discourage fraud in relation to workers' compensation claims, and Section 1208 should not be subjected to a strained interpretation which would undercut that legislative intent.. . . The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.

*Id.* at pp. 12-13.

**The Misrepresentation**

In March 2001, Apeck received information that Mr. Bowers had been horseback riding and was thrown from a horse. Apeck's adjustor believed riding a horse was not an activity that Mr. Bowers, who was being treated for a back injury as a result of his January 7, 2001 work accident, would have or should have been doing if his back injury was genuine. His testimony at trial revealed he also believed that Mr. Bowers being thrown from a horse would have worsened his condition.

At trial, Apeck presented evidence that, one day in March 2001, five persons were barbequing at the home of Linda Bozeman, Mr. Bowers' cousin, and that some of them went horseback riding. Everyone at the barbeque testified at trial. Mr. Bowers and Ms. Bozeman testified that Mr. Bowers did not ride a horse that day. Ms. Bozeman's son, Terry, and Charles Gunter, Mr. Bowers' co-employee who was also Ms. Bozeman's boyfriend, testified that they did not see Mr. Bowers ride a horse that day. Kim Dantzler, the fifth person at the barbeque, testified that Mr. Bowers did go horseback riding and that he fell off a horse while riding. The WCJ discredited the testimony of Mr. Bowers, Ms. Bozeman, Mr. Bozeman, and Mr. Gunter and accepted

Ms. Dantzler's testimony and held that Mr. Bowers did make willful misrepresentations about riding a horse.

Mr. Bowers does not assign as error the WCJ's credibility determination on this issue but argues that there is no indication from Ms. Dantzler's testimony that any injury occurred as a result of his alleged horseback riding. However, Ms. Dantzler also testified:

> When we had concluded our ride he did tell me that I shouldn't say anything about that because he shouldn't be riding a horse. Because of the accident he had previously had at Apeck.

Mr. Bowers' comments to Ms. Dantzler make it clear that he did not want her to tell anyone that he had been horseback riding and had fallen off of a horse because he knew he should not have ridden a horse and that the information would adversely affect his claim. Furthermore, it reveals that his misrepresentations were willful and made to obtain compensation payments. Therefore, they satisfy the requirements of La.R.S. 23:1208.

**The Forfeiture**

Apeck argues that the WCJ's determination that Mr. Bowers made willful misrepresentations in violation of La.R.S. 23:1208 rendered all other issues presented at trial moot because his misrepresentations forfeited his right to any other benefits available to him under the workers' compensation statute. We disagree.

The supreme court recently addressed forfeiture under La.R.S. 23:1208 in *St. Bernard Parish Police Jury v. Duplessis*, 02-632 (La. 12/4/02), 831 So.2d 955. In *Duplessis*, the claimant, who began receiving compensation benefits in 1991, made misrepresentations in 1999 on mileage reimbursement requests. At issue in the case was whether the claimant forfeited only his right to mileage benefits or forfeited his right to all benefits, including disability benefits. The claimant did not deny the

misrepresentations but argued "he should not be subjected to the forfeiture of benefits that are unrelated to the fraudulent statements." *Id*. at 960. The supreme court reviewed its decision in *Resweber* and conflicting lower court determinations on the issue and concluded that the claimant's misrepresentations resulted in forfeiture of his rights to all compensation benefits. The court explained:

> As this court found in *Resweber,* [660 So.2d 7], LSA-R.S. 23:1208 is unambiguous. The Louisiana Legislature has made it clear: false statements that are willfully made for the purpose of obtaining workers' compensation benefits constitutes an attempt to defraud the workers' compensation system. Therefore, once it is determined that a claimant has willfully made a false statement for the purposes of receiving any benefit or payment, the plain language of the statute mandates that the "right to compensation benefits" under the Workers' Compensation Act are forfeited.

*Id.*

However, the supreme court never addressed the issue of *when* forfeiture begins. While a worker may forfeit the right to all types of workers' compensation benefits when he violates La.R.S. 23:1208, we agree with the trial court that benefits are not forfeited until the misrepresentation occurs, in this case the date of the deposition when Mr. Bowers misrepresented the fact that he had ridden a horse.

Subsection D of La.R.S. 23:1208 (emphasis supplied) provides:

> In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. *Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.*

As indicated by Subsection D, it is clear that the intent of the legislature was to punish claimants who make false statements or representations to obtain benefits. Otherwise, the legislature would have provided restitution for any workers' compensation benefits that the employer paid before it became aware of the fraudulent

5

conduct.

The reason for this is simple. Before the misrepresentation, there has been no punishable conduct. The triggering mechanism is the fraudulent conduct. *Resweber*, 660 So.2d 7, (See footnote 7). Once the misrepresentation occurs, the provisions of La.R.S. 23:1208 apply, and from that point the claimant's right to benefits is forfeited. Any other interpretation would have the effect of promoting a system whereby the employers would fail to commence the payment of workers' compensation benefits in the hope of a future false statement which would relieve it completely of the obligation of paying workers' compensation benefits, including its own actions which would be punishable under the Workers' Compensation Act. This would thwart the purpose of the Workers' Compensation Act which "was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families." *O'Regan v. Preferred Enters., Inc.*, 98-1602, p. 5 (La. 3/17/00), 758 So.2d 124, 128 (quoting *Atchison v. May*, 201 La. 1003, 10 So.2d 785, 788 (1942)).

We recognize that there are situations where an employee would forfeit the right to any payment of benefits, such as the case where the fraudulent conduct occurs when relaying a false history to an initial treating physician or on an application of employment. We are also mindful of the first circuit's decision in *LeBlanc v. Grand Isle Shipyard, Inc.*, 95-2452, p. 12 (La.App. 1 Cir. 6/28/96), 676 So.2d 1157, 1164, where the first circuit found that La.R.S. 23:1208 "does not limit the forfeiture of benefits to the time period *after* the claimant makes the false statements or misrepresentations." We disagree with that statement and also note that the claimant in *LeBlanc* had made a false statement initially after his accident to two treating

6

physicians in addition to lying on a pre-employment medical history questionnaire.

With this decision we keep in mind that forfeiture of benefits is a harsh remedy and the statute must be strictly construed. *Wallace v. Lavergne Transp.*, 02-123 (La.App. 3 Cir. 6/12/02), 819 So.2d 508, *writ denied*, 02-1896 (La. 10/25/02), 827 So.2d 1176. Reading La.R.S. 23:1208 as a whole, we find that it was legislature's intent to punish fraudulent conduct to obtain benefits from the time the fraudulent conduct occurs. It is at that time the worker forfeits his right to all types of benefits he may have been eligible to receive.

Therefore, we agree with the WCJ that Mr. Bowers did not forfeit benefits he was entitled to receive *before* he made his willful misrepresentations because he did not commit any fraudulent conduct to obtain those benefits. The WCJ's awards of indemnity benefits for the period April 7, 2001 through December 3, 2001, is affirmed.

**Civil Penalty**

Pursuant to Subsection (D) of La.R.S. 23:1208, the WCJ assessed a $2,000 penalty against Mr. Bowers for his misrepresentations. Mr. Bowers contends that his misrepresentations were not made to obtain benefits; therefore, no penalty should have been assessed against him. For the reasons noted above, Mr. Bowers' statements to Ms. Dantzler establish that his misrepresentations were made to obtain benefits. Accordingly, the WCJ did not err in assessing the $2,000 penalty against him.

**PENALTY AND ATTORNEY FEES**

Because we find that the misrepresentation by Mr. Bowers does not affect his right to any workers' compensation benefits before he made the misrepresentation, we find it necessary to address Apeck's argument that the WCJ erred in awarding a penalty and attorney fees for failure to allow Mr. Bowers an opportunity to be

7

evaluated by his own choice of physician, which also occurred before the misrepresentation.

Pursuant to La.R.S. 23:1121(B), an employee has the "right to select one treating physician in any field or specialty." Mr. Bowers testified that he asked to see Dr. David Steiner after the injury but Apeck told him no and sent him to another doctor. Apeck claims that this request was never made.

Obviously, the WCJ made a credibility determination that Mr. Bowers was telling the truth. However, we find this determination has no bearing on the facts of this case.

Pursuant to La.R.S. 23:1121, an employer's or insurer's consent is not required for the claimant to see his first choice of physician. It is only when the claimant makes a request to change physicians, that La.R.S. 23:1121 becomes applicable. *Howard v. Our Lady of the Lake Reg'l Med. Ctr.*, 99-1826 (La.App. 1 Cir. 9/22/00), 768 So.2d 293. Mr. Bowers did not need Apeck's permission to see Dr. Steiner as his first choice of an orthopedist because he has a statutory right to see a physician of his first choice in any field or specialty. Apeck's refusal to allow Mr. Bowers to see Dr. Steiner did not trigger the provision of La.R.S. 23:1121 allowing an award of attorney's fees.[1] Thus, we reverse the award of a penalty and attorney fees based on Apeck's refusal to allow Mr. Bowers to see Dr. Steiner.

**DISABILITY**

Apeck also argues that the trial court erred in finding that Mr. Bowers suffered any disability as a result of the accident. It claims that he was in poor health prior to

[1] We do agree with Apeck that La.R.S. 23:1121 does not authorize a penalty award when an employer or insurer arbitrarily or capriciously withholds its consent to a change of treating physician. It only authorizes an award of attorney's fees. *Smetak v. Louisiana Workers' Compensation Corp.*, 97-1497 (La.App. 3 Cir. 4/15/98), 711 So.2d 417.

the accident, having already suffered a back injury from an accident at a previous job.

A workers' compensation claimant bears the burden of establishing by a preponderance of the evidence that he has received "personal injury by accident arising out of and in the course of his employment . . . ." La.R.S. 23:1031(A).

> The workers' compensation judge's determination as to whether the claimant's testimony is sufficient to discharge the burden of proof constitutes a factual determination. Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong.

*LeBlanc v. Calcasieu Parish Sch. Bd.* , 02-728, p. 2 (La.App. 3 Cir. 12/30/02), 834 So.2d 1258, 1260 (citations omitted).

Dr. Douglas McKay, an orthopedic surgeon, treated Mr. Bowers three times, at which time Apeck discontinued Mr. Bowers' benefits. Dr. McKay noted that Mr. Bowers' back pain was a little higher in his back than his previous injury. This was confirmed by Mr. Bowers' testimony. The results of a bone scan were normal, and an MRI indicated mild degenerative disc disease at L5-S1, but was otherwise normal. Dr. McKay testified that he did not know if the degenerative disc disease was aggravated by the accident, so he wanted to have additional tests performed on Mr. Bowers. Dr. McKay testified that a facet joint block and a MRI with contrast would help with his diagnosis. However, these tests were not performed because Apeck discontinued Mr. Bowers' medical benefits.

While Dr. McKay agreed that most of Mr. Bowers' complaints were subjective except for some muscle spasm, he stated that he would need to determine what is exactly wrong before he concluded whether the accident was causing Mr. Bowers' problems. This is why he wanted to perform additional testing. At the time of the last

9

visit on March 30, 2001, Dr. McKay had not released Mr. Bowers back to work.

With this evidence we do not find that the WCJ was clearly wrong in finding that Mr. Bowers suffered a disability as a result of the accident. Mr. Bowers' benefits were terminated before a proper determination as to Mr. Bowers' disability could be made, and as of the termination, Dr. McKay wanted to perform some additional testing.

## TERMINATION OF BENEFITS

Mr. Bowers' benefits were terminated on April 7, 2001. Louisiana Revised Statute 23:1201.2 provides that reasonable attorney fees are awarded as a penalty under the workers' compensation law when an employer discontinues payment of benefits, and "such discontinuance is found to be arbitrary, capricious, or without probable cause . . . ." Apeck claims that the WCJ erred in finding that its termination of Mr. Bowers' benefits was arbitrary and capricious and granting attorney fees for such.

> Arbitrary and capricious behavior is willful and unreasonable action, without consideration and regard for the facts and circumstances presented. An award of attorney's fees in a workers' compensation case is essentially penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers. Attorney's fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative.

*J.E. Merit Constr., Inc. v. Hickman*, 00-943, p. 5 (La. 1/17/01), 776 So.2d 435, 437-38 (citations omitted).

Reviewing the WCJ's oral reasons for judgment, it appears that the WCJ was not too impressed with the insurance adjuster's reasons for terminating benefits. Phil Moory was the insurance adjuster who terminated benefits. Mr. Moory testified that he terminated benefits because he had information that Mr. Bowers was not being truthful, that he had been thrown from a horse and he was not following doctor's

10

recommendations because he would show up at the office under the influence of alcohol. After agreeing that there was no recommendation from Dr. McKay that Mr. Bowers not consume alcohol, he testified that he terminated benefits primarily because he had information that Mr. Bowers was thrown from a horse. Mr. Moory opined that if Mr. Bowers was healthy enough to stand that trauma, he must be a "pretty tough guy."

Mr. Moory admitted that at the time he terminated benefits, he had not even questioned Mr. Bowers about the horse incident. He had the opportunity to do so, having interviewed Mr. Bowers after he found out about the horse incident. Mr. Moory never investigated the situation any further, medically or otherwise, before he terminated benefits. We do not find that the trial court erred in finding that Apeck arbitrarily and capriciously terminated Mr. Bowers' benefits, and therefore, an award of attorney fees was proper.

**DECREE**

The WCJ's award of a $2,000 penalty and $2,500 attorney fees for Apeck's refusal to allow him to be evaluated by a physician of his choice is reversed. In all other respects the judgment is affirmed. All costs of this appeal are assessed against Apeck Construction, Inc.

**AFFIRMED IN PART AND REVERSED IN PART.**

11

APECK CONSTRUCTION, INC.

        Plaintiff - Appellant

VERSUS

FOSTER M. BOWERS

        Defendant - Appellee

On appeal from the Office of Workers' Compensation, District 2, Parish of Rapides, No. 01-4632, James L. Braddock, Workers' Compensation Judge, presiding.

Sullivan, Judge, dissenting.

I would reverse the WCJ's award of benefits to Mr. Bowers because I find the supreme court's decisions in *St. Bernard Parish Police Jury v. Duplessis*, 02-632 (La. 12/4/02), 831 So.2d 955, and *Resweber v. Haroil Construction Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7, and the construction of La.R.S. 23:1208 are clear that any misrepresentation, by a workers' compensation claimant, regardless of when made, results in forfeiture of all benefits the claimant would otherwise be entitled to receive.

The WCJ's awards of indemnity benefits for the period April 7, 2001 through December 3, 2001, penalties, and attorney fees are identical to the claimant's position in *Duplessis*, 831 So.2d 955: Mr. Bowers did not forfeit benefits he was entitled to receive *before* he made his willful misrepresentations because they "are unrelated to the fraudulent statements." *Duplessis*, 831 So.2d at 960. After *Duplessis*, I find this position untenable. If a claimant's willful false statement regarding mileage reimbursement forfeits *all* of his compensation benefits, a claimant's willful false

statement regarding an activity or event that may have aggravated an existing injury or may have caused additional injury forfeits all of his benefits.

The majority's determination that Mr. Bowers did not forfeit benefits prior to his misrepresentation at his deposition is based in part upon La.R.S. 23:1208(D). This provision, which provides for restitution by a claimant to his employer when the claimant makes a misrepresentation which results in forfeiture of his benefits, supports my conclusion. The restitution provided for in Subpart D "may only be ordered for benefits claimed or payments obtained through fraud and *only up to the time the employer became aware of the fraudulent conduct*." (Emphasis added.) There is no reference or requirement that the claimant make a misrepresentation to the employer. Therefore, pursuant to Subpart D, if Apeck had continued paying benefits to Mr. Bowers after it learned of his actions at the March 2001 barbeque, it would have risked waiving its claim for restitution because the benefits would have been paid after it was "aware" of his "fraudulent conduct." Additionally, there is no limiting language in Subpart E as in Subpart D. The legislature could have included such language in Subpart E but did not.

The majority asserts that any interpretation other than its interpretation would encourage employers not to pay benefits timely in hope of an employee making a false statement in the future. However, such an employer is subject to penalties and attorney fees. *See* La.R.S. 23:1201 and 23:1201.3. As noted by the majority, the intent of the workers' compensation statute is to insure that employees injured while in the course and scope of their employment receive benefits during the time of their disability; it is intended to benefit both the employee and the employer. To award benefits to Mr. Bowers, whose comments to Ms. Dantzler make it clear that he intended to deceive Apeck from the date of the incident, is in contravention of the statute.

In *KLLM v. Reed*, 00-295 (La.App. 3 Cir. 10/11/00), 777 So.2d 728, this court held that issues of penalties and attorney fees are moot once forfeiture under La.R.S. 23:1208 has been found applicable.  Accordingly, I am of the opinion that the WCJ's award of penalties and attorney fees was also error.

For these reasons, I respectfully dissent.