STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-38

ANGELLE CONCRETE, INC.

VERSUS

JERRY SANDIFER

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT - # 3
PARISH OF CALCASIEU, NO. 04-00171 C/W 04-00211
CHARLOTTE A. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Saunders, J. concurs in part, dissents in part and assigns written reasons.

Earl G. Pitre
Pitre, Halley & Sikich
P. O. Box 3756
Lake Charles,, LA 70602
Counsel for Appellee:
    Angelle Concrete, Inc.

Thomas E. Townsley
Attorney at Law
711 Pujo Street
Lake Charles, LA 70601
Counsel for Appellant:
    Jerry Sandifer

PICKETT, Judge.

The claimant, Jerry Sandifer, appeals a judgment of a Workers' Compensation Judge (WCJ) finding that the claimant's employer, Angelle Concrete, Inc. (Angelle), was justified in terminating his indemnity benefits. On appeal, the claimant seeks reinstatement of indemnity and medical benefits, plus penalties and attorney's fees for the defendant's arbitrary and capricious handling of his claim. We affirm in part and reverse in part the judgment of the WCJ and remand the case with instructions.

## FACTS

The parties stipulated that the claimant was injured in the course and scope of his employment as a truck driver on October 29, 2003. It is also undisputed that the claimant owned and operated his own private business, a detail shop, Jerry's Soft Touch, which he opened in September 2003.

As a result of the October 29, 2003 accident, Mr. Sandifer suffered an injury to his right shoulder which was diagnosed as a rotator cuff tear. He was initially seen by Dr. Nathan Cohen, the company's choice of physicians. When Dr. Cohen recommended surgery, Mr. Sandifer decided to consult Dr. Dale Bernauer, who had operated on him previously. Dr. Bernauer concurred with Dr. Cohen, i.e., that surgery was indicated. Neither doctor felt that the claimant could continue his duties as a cement truck driver and, Mr. Sander was placed on temporary total disability (TTD) status. In November and early December 2003, the claimant was placed under video surveillance on a number of occasions. The tapes revealed the claimant working at his detail shop and at a friend's business. On December 5, 2003, the claimant executed a LDOL-WC-1025 form. The form informed the claimant that "[i]t is unlawful for you to work and receive workers' compensation benefits, except for

1

supplemental earnings benefits." The form goes on to define supplemental earnings benefits and warns the employee that "you must notify your employer or insurer of the earning of any wages. . ." The form also warns the claimant that failure to comply with its directives can result in a fine and/or imprisonment and the loss of workers' compensation benefits.

After reviewing the surveillance tapes, the claimant's medical records, and the 1025, the adjuster for Gray Insurance Company, Angelle's workers' compensation carrier, filed a form 1008, Disputed Claim for Compensation, and terminated Mr. Sandifer's benefits effective December 21, 2003. The case came on for a hearing on May 5, 2005, and judgment was rendered in favor of the defendants on September 6, 2005. This appeal followed.

## LAW AND DISCUSSION

In *Dean v. Southmark Const.*, 03-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117, the supreme court discussed the standard of review in workers' compensation cases:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105.

2

The record establishes that the claimant suffered an on the job injury—a tear to the rotator cuff of his right shoulder. Both the company physician, Dr. Cohen and the claimant's own physician, Dr. Bernauer agreed in that diagnosis and both recommended surgery. Yet, the defendant failed to authorize the surgery, claiming it wanted another opinion. We find the defendant's refusal to authorize the surgery arbitrary and capricious and award the claimant $2,000.00 in penalties and $5,000.00 in attorney's fees for this unwarranted action.

We next address the issue of indemnity benefits. In her judgment, the WCJ found "the defendant was justified in stopping claimant's workers' compensation benefits based on claimant's representation that he could not work, yet he was working and earning money in his auto detail shop business. At the time claimant signed the Form 1025, he was earning money in his auto detail shop."

At the May 5, 2005 hearing, the claimant testified as follows:

Q. Did you read the form before you signed it?

A. Yes, sir, I did.

Q. Did you talk with your lawyer before you signed it?

A. Yes, sir, I did.

Q. Did you know what you were signing when you signed it?

A. No, sir, not really. I thought it was just a -- make sure my workmen's comp keep going; that's what I thought it was for.

Q. But you called your lawyer to get advice?

A. Yes, sir, I did.

Q. And you got the advice?

A. And my lawyer's advice was to sign it and give it back, and it was told to me that everybody in the company had to sign one of those.

3

Q. And you knew this form is a -- it's unlawful for you to work and receive workers' compensation disability benefits, right?

A. Yes, it said that.

Q. Okay. And you knew you that when you signed it?

A. I knew what it--

Q. And you knew that when you signed it?

A. My understanding when I signed that, it was that they wouldn't cut my workmen's comp out; that was my understanding.

Q. But you read it?

A. Yes, I read it.

Q. You read it? So, you read and you signed it after you talked to your lawyer?

A. That's right, I did.

Q. And you knew -- you knew what you were signing; you knew you were signing this form?

A. I talked to my lawyer. My lawyer told me to sign it.

Q. How much money did you make while you were working at your Jerry's Soft Touch?

A. Not enough, that's for sure. I went in the hole.

Q. You would charge up to $65 to do a large truck?

A. A full detail, yes, sir.

Q. And 50 to $55 to detail a car?

A. Do what?

Q. 50 to $55 to detail a car?

A. Yes, sir.

Q. And a regular wash was like $20?

A. Yes, sir.

4

Q. And you did a lot of those during the time after October 29 of '03, right?

A. Not necessarily, sir, because, like I say, I still took a loss and I'm still taking a loss as of now.

Q. But you did get money in --

A. Yes, sir.

Q. -- while you were working?

A. Why I was working?

Q. While you were working at Jerry's Soft Touch, you made money; you were the owner.

A. I guess you would say that, yes, sir.

In sum, the claimant's own testimony supports a finding that the defendant was justified in stopping the claimant's TTD benefits. However, our inquiry does not stop there. We note that the WCJ found the defendant was justified in stopping claimant's workers' compensation benefits based on claimant's representation that he could not work, his signing of the Form 1025, and the fact that at the time he signed the form he was working in his auto detail shop business. The foregoing provides a basis for a finding that the defendant's action in terminating the claimant's TTD was not arbitrary, capricious and without probable cause and that the actions were reasonably controverted. However, we note that the WCJ never made a specific finding that the claimant's actions had risen to the level of fraud under La.R.S. 23:1208. It is well settled that:

> "After establishing that a claimant has made a false statement or misrepresentation ... the [WCJ] must make a factual determination as to whether, based on the record, the statement was willfully made specifically to obtain benefits, and thus defraud the workers' compensation system." *Harris v. Christus St. Patrick Hosp.*, 02-1502, p. 6 (La.App. 3 Cir. 10/22/03), 857 So.2d 1278, 1283, *writ denied*, 03-3193 (La. 2/13/04), 867 So.2d 697 (quoting *Marler v. New Orleans*

5

*Area Council, Boy Scouts of Am.*, 01-1167, pp. 7-8 (La.App. 5 Cir. 3/13/02), 815 So.2d 131, 135) (second alteration in original).

*Phillips v. Diocese of Lafayette*, 03-1241, p. 7 (La.App. 3 Cir. 3/24/04), 869 So.2d 313, 317-318. Because La.R.S. 23:1208 is penal in nature, it must be strictly construed. *Wallace v. Lavergne Transp.*, 02-123 (La.App. 3 Cir. 6/12/02), 819 So.2d 508, *writ denied*, 02-1896 (La. 10/25/02), 827 So.2d 1176.

Although not on all fours with this case, we find the *Wallace* case has some striking similarities:

> The claimant, James Wallace, was injured on May 12, 1998 in a car accident while working as a truck driver for the defendant, Lavergne Trucking. . . . As a result of the accident, the claimant suffered a back injury. The claimant was subsequently placed on workers' compensation temporary total disability benefits. On January 11, 1999, Dr. Stephen Goldware and Dr. Louis Blanda performed back surgery on the claimant, which included a discectomy and a fusion.

> In October of 1999, the claimant began selling fresh shrimp and crabs out of his van on a roadside in Nuba, Louisiana. . . . According to the medical records and the claimant's testimony, the claimant expressed a desire to increase his activity level and considered selling seafood as a means of getting out of the house and being productive.

> On December 6, 1999, the defendant ceased payment of workers' compensation benefits to the claimant alleging that the claimant engaged in deceptive acts that constituted fraud pursuant to La.R.S. 23:1208.

> . . . .

> The defendant's main contention is that the claimant signed each disability check and the back of each check contained a printed statement which read: "FRAUD WARNING by endorsing this check I certify that I have not worked or earned any wages during the period covered by this check." Thus, the defendant argues that by signing the checks, which contained the fraud warning, and working, selling the seafood, the claimant violated La.R.S. 23:1208 and should lose all workers' compensation benefits.

> Nevertheless, the claimant explains that he never hid his intention to sell the seafood. In fact, the claimant expressed the desire to sell the seafood to his physical therapist and explained that he wanted to have "something to do." The plaintiff had advertising flyers printed and sold

6

the seafood at a busy intersection in Nuba, Louisiana. The claimant testified that he sold the seafood approximately for a period of six to seven weeks and that he stopped selling the seafood before his weekly benefits were terminated because he was not making any money. In his brief, the claimant points out that he was advised by his physicians not to do any heavy lifting, but was encouraged to become more active. The claimant and his wife both testified that selling the seafood to the public was not about "cheating anybody," but about giving the claimant a method to reenter society.

. . . .

In his oral reasons for judgment, the workers' compensation judge explained:

. . . .

> Well, I'd just like to note for the record in this matter that it seems to be in this case where there's an employee injured there's no question about his injury, his accident, no question about the seriousness of his injury. The employee on his own is very initiative, very industrious, makes an attempt to return to work, however the payor of benefits, rather than complying with its obligations to provide vocational assistance to assist the gentleman in returning to work or retraining him properly in entering a pursuit of shrimp sales commercially, . . . instead has him surveilled and then terminates his benefits before they're even aware that he has made any actual earnings from the activities they have observed.

We, too, agree that the defendant did not produce adequate evidence to meet the requirements of La.R.S. 23:1208, namely that the claimant was willfully making false statements. The claimant disclosed his intentions to his physical therapist and did not appear to operate in a cloak of secrecy. Additionally, from our review of the record, it does not appear that the claimant attempted to lie about his activity or was given the opportunity to explain his actions prior to the termination of his benefits. . . . While this case may be better suited for supplemental earnings benefits, which is a route that the defendant chose not to pursue, this specific case does not rise to the level of willful misrepresentation as prescribed in La.R.S. 23:1208.

*Wallace*, 819 So.2d 509-13.

In the case sub judice, the defendant knew that the claimant owned and ran an automotive detail business. We note that the video surveillance on the claimant was

7

begun well before he was asked to execute the 1025 (the wording on the checks in *Wallace* is equivalent to the wording on the 1025 in this case). Thus, the defendant knew the claimant owned a business, knew he was "working" at the business, but, nonetheless, never endeavored to ascertain if Mr. Sandifer was actually making any money from that business (his tax records show he lost money in the business). We also note that there is nothing in the claimant's medical records which would preclude him from light duty employment. Additionally, it was established that although the defendant expressed interest in having Mr. Sandifer return to work in a light duty status, a light duty position was not available at the time (Dr. Cohn restricted the claimant to sedentary work and Dr. Bernauer certified him to light duty with the proviso "cannot use r[ight] arm"). Finally, we take notice of the fact that Dr. Bernauer reviewed the video surveillance and concluded that nothing that Mr. Sandifer did during the surveillance was inconsistent with his injury or against medical advice.

Considering the spirit of the workers' compensation laws, the actions of this court in *Wallace*, and the facts in this case, we find it was legal error for the WCJ to completely terminate Mr. Sandifer's worker's compensation benefits. While Mr. Sandifer's actions clearly show that he is not totally disabled, we find he is nonetheless still qualified for SEB.

Accordingly, for the reasons stated above, the judgment of the WCJ is affirmed in that we find that the claimant's TTD benefits were properly terminated. We reverse the termination of the claimant's medical benefits. We remand the case for proper determination of SEB benefits due Mr. Sandifer. Additionally, we award Mr. Sandifer $2,000.00 in penalties and $5,000.000 in attorney's fees for the defendant's

8

failure to timely authorize his rotator cuff repair and order that approval for the surgery be granted posthaste. All costs of this appeal and at the trial level are assessed against the defendant's workers' compensation carrier.

**AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.**

NUMBER WCA 06-38

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

ANGELLE CONCRETE, INC.

VERSUS

JERRY SANDIFER

SAUNDERS, J., concurs in part, dissents in part, and assigns written reasons.


This is a workers' compensation case in which Claimant, Mr. Jerry Sandifer, suffered a rotator cuff tear during the course and scope of his employment as a truck driver with Angelle Concrete, Inc. Under La.R.S. 23:1221(1), temporary total benefits are to paid only when an employee's work-related injury prevents him from engaging in any self-employment or occupation for wages. In my view, Mr. Sandifer's temporary total benefits should not have been reduced to supplemental earnings benefits, as the record contains uncontradicted testimony that he was not engaged in any employment or self-occupation *for wages*.

As a result of his injury, Mr. Sandifer was prevented from returning to his job as a cement truck driver for Angelle Concrete, Inc. In addition to working as a truck driver, Mr. Sandifer owned and operated Jerry's Soft Touch, a detail shop, which he continued to operate after his accident. Some time after the accident, he was placed under video surveillance, and was taped cleaning and detailing cars at the shop. Although the video footage does not show Mr. Sandifer doing anything inconsistent with his injury or against medical advice, it proves that he was, in fact, able to perform some sort of labor. However, in order to reduce one's temporary total disability benefits to supplemental earnings benefits, the employment must be *for*

***wages***. Mr. Sandfier testified at trial on March 5, 2003 that although he continued to operate the detail shop, and it continued to bring in revenue after the date of the accident, it was not enough, and that he "went in the hole." The money paid by the customers for services performed on their vehicles did not constitute "wages" paid to Mr. Sandifer. Instead, this money was capital that was paid back into the business, Jerry's Soft Touch, in order to run it. Mr. Sandifer testified that the money he earned from the operation of the detail shop was less than the amount he had to expend to run it. Therefore, he received no net profit and no "wages" from the operation of the detail shop. In fact, he experienced a loss. Therefore, although Mr. Sandifer may have been engaged in some labor at the shop, it was clearly not employment or self-occupation ***for wages***, as he earned no money from said labor.

Defendant argues that Mr. Sandifer "made money" by working at the detail shop. However, it has presented no evidence to support its position. Moreover, it has not proven that Mr. Sandifer has the capacity to engage in any self-employment or occupation ***for wages.*** Defendant has clearly not carried its burden of proof. Therefore, I contend that, as a matter of law, the termination of Mr. Sandifer's temporary total benefits was improper.

In as much as the majority has concluded that Mr. Sandifer was not prevented from engaging in any self-employment or occupation for wages, I do agree with their conclusion that he is eligible to receive supplemental earnings benefits. La.R.S. 23:1221(3); *Smith v. Dept. of Corrections*, 93-1305 (La. 2/28/94), 633 So.2d 129. An employee who is injured during the course and scope of his employment may recover supplemental earnings benefits if he can show, by a preponderance of the evidence, that as a result of the injury sustained, he is prevented from earning at least 90% of his pre-accident wages. La.R.S. 23:1221(3). Clearly, Mr. Sandifer is entitled to

receive, at least, supplemental earnings benefits, as it has not been shown that he was able to earn 90% of his pre-accident wages. He was not able to return to his primary job as a truck driver due to the severity of his injury. Additionally, as discussed earlier, he made no net profit from the operation of his detail business.

Supplemental earnings benefits are based on the difference between the average weekly wage of employee at the time of the accident and the proven earning capacity after the injury. *Pinkins v. Cardinal Wholesale Supply*, 619 So.2d 52 (La.1993). Accordingly, supplemental earnings benefits should be determined based on the difference between the average weekly rate Mr. Sandifer earned before the accident and zero, as the record indicates there was no net profit from the operation of the detail shop, and Defendant has not proven Mr. Sandifer's earning capacity otherwise. I see no reason to remand this case to the trial court for calculation, as the amount of supplemental earnings benefits based on zero would be equal to the amount of temporary total benefits he was receiving before defendant terminated the benefits. Therefore, I dissent insofar as the majority opinion holds that Defendant properly discontinued temporary total benefits and insofar as the majority finds it necessary to remand the case to determine the rate of supplemental earnings benefits payments. In all other respects, I concur with the majority opinion.


JDS